IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEONARD A. SACKS & ASSOCIATES, P.C.<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>INTERNATIONAL MONETARY FUND<br><br>　　　　　Defendant. | Civil Action No. 1:20-cv-2266 |

**THE INTERNATIONAL MONETARY FUND'S[1] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

---

[1] The Fund appears specially only to move the Court to dismiss this action because the Fund's immunity from every form of judicial process deprives the Court of subject matter jurisdiction.

DATED:  August 18, 2020        Respectfully submitted,

SEYFARTH SHAW LLP

By:  /s/ *Renee Appel*
      Renee B. Appel
      (rappel@seyfarth.com)
      James R. Newland, Jr. (admission pending)
      (jnewland@seyfarth.com)
      Bret Marfut (admission pending)
      (bmarfut@seyfarth.com)
      SEYFARTH SHAW LLP
      975 F Street, N.W.
      Washington, DC  20004-1454
      Telephone: (202) 463-2400
      Facsimile:  (202) 828-5393

      *Attorneys for the International Monetary Fund*
      *Appearing Specially*

## <u>TABLE OF CONTENTS</u>

**Page**

I.   BACKGROUND AND POSTURE PRIOR TO REMOVAL ............................................. 1

    A.   The Fund and its Immunity from Judicial Process ................................................ 1

    B.   The Contract Preserves the Fund's Immunity from Judicial Process ................... 3

    C.   The Dispute, Arbitral Award, and Sacks's Motion................................................ 4

    D.   Procedural Background........................................................................................... 4

II.   ARGUMENT ........................................................................................................... 5

    A.   This Action Must be Dismissed Because the Fund is Absolutely Immune
           from Sacks's Suit ................................................................................................... 6

           1.   Federal Rule of Civil Procedure 12(b)(1). ............................................... 6

           2.   The Articles of Agreement provide the Fund absolute immunity
               (BWAA Immunity). .................................................................................. 7

           3.   The Contract expressly preserves the Fund's immunity............................ 8

    B.   Sacks's Failure to Serve the Fund Independently Warrants Dismissal
           Under Rule 12(b)(5) and 7(b) .............................................................................. 10

    C.   Sacks's Motion Fails to State a Claim Upon Which Relief May be Granted
           and it Should be Dismissed under Rules 12(b)(6) and 7(b)................................. 11

III.   CONCLUSION........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Gov't Employees, Local 2924 v. Fed. Labor Relations Auth.*,
   470 F.3d 375 (D.C. Cir. 2006) ...................................................................................................8

*In re Capitol Hill Grp.*,
   447 B.R. 387 (D.D.C. 2011) .....................................................................................................8

*Conyers v. Westphal*,
   235 F. Supp. 3d 72 (D.D.C. 2017) ...........................................................................................7

*Curran v. Holder*,
   626 F. Supp. 2d 30 (D.D.C. 2009) ...........................................................................................6

*David Randal-Williams v. International Monetary Fund*,
   Case No. 1:03CV01884-RCL (2003) .......................................................................................5

*Donald v. Orfila*,
   618 F. Supp. 645 (D.D.C. 1985), *aff'd*, 788 F.2d 36 (D.C. Cir. 1986)...................................12

*Garcia v. Sebelius*,
   919 F. Supp. 2d 43 (D.D.C. 2013) .....................................................................................7, 11

*Gordon v. Office of the Architect of the Capitol*,
   750 F. Supp. 2d 82 (D.D.C. 2010) .......................................................................................6, 7

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C.2001) ..............................................................................................7

*Hill v. Smoot*,
   308 F. Supp. 3d 14 (D.D.C. 2018) ...........................................................................................6

*Jam v. Int'l Fin. Corp.*,
   139 S. Ct. 759 (2019).......................................................................................................2, 7, 8

*Kissi v. de Laroisiere*,
   No. 82-1267 (D.D.C. June 23, 1982) (J.H. Green, J.) ....................................................7, 9, 12

*Mendaro v. World Bank*,
   717 F.2d 610 (D.C. Cir. 1983) .................................................................................................8

*Nyambal v. Int'l Monetary Fund*,
   772 F.3d 277 (D.C. Cir. 2014) .........................................................................................passim

*Polak v. Int'l Monetary Fund,*
   657 F. Supp. 2d 116 (D.D.C. 2009), *aff'd*, No. 09-7114, 2010 WL 4340534
   (D.C. Cir. Oct. 20, 2010) ..........................................................................................6, 7, 9

*Process and Industr. Devs. Ltd. v. Federal Republic of Nigeria, et. al.,*
   962 F.3d 576 (D.C. Cir. 2020) ........................................................................................6, 11

*Tootle v. Secretary of the Navy,*
   446 F.3d 167 (D.C. Cir. 2006) ............................................................................................7

*Xie v. Sklover & Co., LLC,*
   260 F. Supp. 3d 30 (D.D.C. 2017) ....................................................................................11

**Statutes**

22 U.S.C. § 286h ..............................................................................................1, 2, 7, 9

Bretton Woods Agreements Act, 22 U.S.C. § 286, *et seq.* ................................. *passim*

D.C. Code § 16-4423 ....................................................................................................5

60 Stat. 1401 .............................................................................................................1, 2

**Other Authorities**

Fed. R. Civ. P. 7(b) ..............................................................................................6, 11, 12

Fed. R. Civ. P. 12(b)(1) ........................................................................................6, 11, 12

Fed. R. Civ. P. 12(b)(5) ........................................................................................6, 11, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................6, 11, 12

The Articles of Agreement of the International Monetary Fund (the "Fund" or "IMF") provide the Fund[2] "immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract." Articles of Agreement, Art. IX, Section 3.  The Articles of Agreement are a treaty (*see* 60 Stat. 1401; 2 UNTS 39) and have been given full force and effect in the United States by the Bretton Woods Agreements Act, 22 U.S.C. § 286, *et seq.* (the "BWAA").  In this case, movant Leonard A. Sacks & Associates, P.C. ("Sacks") asks the Court to modify or vacate an arbitral award entered in the Fund's favor. But the Fund did not expressly waive its absolute immunity from judicial process; to the contrary, its contract with Sacks expressly reserves it.  Where, as here, there is no express waiver, the Fund's immunity deprives this Court of subject matter jurisdiction and the Court must dismiss this action[3] with prejudice.  *Nyambal v. Int'l Monetary Fund,* 772 F.3d 277 (D.C. Cir. 2014).

## I.      BACKGROUND AND POSTURE PRIOR TO REMOVAL

### A.      The Fund and its Immunity from Judicial Process

The International Monetary Fund is one of the main international organizations established in the wake of World War II to help its member countries pursue their collective goal of rebuilding the international economy. *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 765 (2019). Its Articles of

---

[2] On August 18, 2020, the Fund appeared specially to remove this action and to file its Motion to Dismiss based upon the Fund's absolute "immunity from every form of judicial process." Articles of Agreement Art. IX Section 3; 22 U.S.C. § 286h.

[3] Preceding this Motion to Dismiss is the Fund's Notice of Removal.  *See* D.E. 1.  Sacks commenced the lawsuit by filing a Motion to Modify And/Or Motion to Vacate Arbitration Award (the "Motion to Vacate" or "Sacks's Mot.") in the Superior Court for the District of Columbia and the Fund removed the case to this Court.

Agreement,[4] a treaty executed by the United States,[5] was entered into force on December 27, 1945, and has been effective ever since.  *See* BWAA, 22 U.S.C. § 286 *et. seq.* As stated in the Articles of Agreement, the Fund's purposes include promoting international monetary cooperation, facilitating the expansion and balanced growth of international trade, promoting exchange stability, and providing temporary financial assistance to its member countries experiencing balance of payments difficulties.  *See* Articles of Agreement, Art. I.

The Articles of Agreement grant the Fund absolute immunity from judicial process in its member countries:

> *Immunity from judicial process.* The Fund, its property and its assets, wherever located and by whomsoever held, shall enjoy immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract.

Articles of Agreement, Art. IX, Section 3; 22 U.S.C. 286h.  The U.S. Supreme Court, in *Jam v IFC,* recognized that the immunity granted to the Fund is far broader than the immunity afforded other international organizations such as the IFC. *Jam, supra,* 139 S. Ct. at 772. The BWAA gives this immunity provision (and several others) "full force and effect in the United States." 22 U.S.C. § 286h. The Fund has not waived its immunity from judicial process for the purposes of this proceeding nor by the terms of its contract with Sacks.  *See* Affidavit of Jianhai Lin,[6] Secretary of the Fund.

---

[4] The current version of the Fund's Articles of Agreement is available at http://www.imf.org/external/pubs/ft/aa/index.htm.

[5] 60 Stat. 1401; 2 UNTS 39.

[6] The Affidavit of Jianhai Lin is included in the Appendix.

**B.**      **The Contract Preserves the Fund's Immunity from Judicial Process**

This case arises from a dispute between the Fund and Sacks.  Sacks's principal, Leonard A Sacks, is an attorney who represented the Fund in connection with various renovation projects over two decades. Sacks's Mot. Ex. 1 at 2. In 2016, the Fund and Sacks entered into an amendment to their contract whereby the Fund would pay Sacks a reverse contingent fee if he could settle certain subcontractor claims related to the renovation of the Fund's headquarters by a particular date. The relevant contract and amendment, which the Fund will refer to collectively as the "Contract," is attached to Sacks's Motion.[7]

Because of the Fund's immunity from judicial process in the United States, the Fund's contracts with suppliers and service providers expressly reserve this immunity and provide for final and binding arbitration as the alternative dispute resolution mechanism.  Sacks's Contract was no different.  *See* Contract, Art. 20 (titled "Immunities of the International Monetary Fund: Taxes and Disputes").  Subpart 20.1 of the Contract recites and incorporates the immunities provided by the BWAA. Subpart 20.1(b), meanwhile, provides arbitration as the *exclusive and final* remedy in the event a dispute is not mutually settled, and reiterates the express reservation of the Fund's immunities.

> 20.1      Article IX of the Articles of Agreement of the International Monetary Fund, as incorporated by the laws of the United States and the District of Columbia by the Bretton Wood Agreements Act (22 U.S. Code Section 286(h)), provides that the International Monetary Fund, its property and its assets, wherever located and by whomsoever held, *are immune from every form of judicial process*. . . . Accordingly, and notwithstanding anything to the contrary in this Agreement or any documents to which it refers, it is expressly agreed and understood that:

---

[7] Sacks attached two parts of the contract to its Motion, the original contract known as Agreement for Professional Services Agreement Number 1917 (Sacks's Mot. Ex. 2), and Amendment No. 3 to Agreement for Professional Legal Services (Sacks's Mot. Ex. 3).

\* \* \*

> [20.1](b)     Any controversy of claim arising out of or relating to
> the Contract or any breach, termination of invalidity thereof, shall
> be settled by the mutual agreement of the parties hereto, provided
> that failing such agreement the dispute shall be *finally settled* by
> binding arbitration *administered by the American Arbitration
> Association (AAA)* in accordance with its Commercial Arbitration
> Rules then in effect. .   .   . *The arbitral case* shall be decided
> according to the terms of the Contract and the law of the District of
> Columbia. . . . Each party agrees to implement any requirements of
> the arbitrator or arbitrators directed to it in accordance with those
> rules. It is understood and agreed that the submission of a claim or
> dispute to arbitration shall not excuse either party from performing
> its obligations under the contract, and *shall not be considered to be
> a waiver of the immunities of the IMF*.

Contract, Art. 20.1 (emphasis added).  These contract terms are clear, unambiguous, and cannot

"be considered to be a waiver of the immunities of the IMF." *Id.*

### C.     The Dispute, Arbitral Award, and Sacks's Motion

When a dispute arose over Sacks' legal fees, Sacks invoked the exclusive contractual

remedy: arbitration with the Fund.  Sacks sought millions of dollars in additional compensation

above and beyond the $2.37 million fee that the Fund paid him for his work.   Sacks's Mot. Ex. 1

at 3.  Following a two-day arbitral hearing, the exchange of hundreds of documents, and the

presentation of detailed fee calculations presented by the parties' expert witnesses, the Arbitrators

concluded that Sacks was entitled to only $39,918.82 in additional fees (plus interest).  Sacks's

Mot. Ex. 1 at 21.  The Fund tendered the amount due to Sacks on November 27, 2019, but ignoring

the Contract and the arbitral award, Sacks returned the check on January 3, 2020, and commenced

this action.

### D.     Procedural Background

Sacks filed its Motion to Modify and/or Motion to Vacate Arbitration Award in the

Superior Court for the District of Columbia. Sacks seeks an order vacating the arbitral award

"pursuant to D.C. Code § 16-4423" and requiring a new arbitral proceeding on the same dispute or, if the arbitral award is not vacated, an increase in the award in the amount of $656,327; a judgment in the amount of the arbitrators' fees and costs that Sacks asserts it paid to the AAA; and a judgment covering Sacks's attorney's fees to be incurred in this action.  Sacks's Mot. at 17.

The Fund was never served with Sacks's Motion (the operative Complaint).[8] On May 20, 2020, the Fund sent a letter to the Clerk of the District of Columbia Superior Court, explaining that the Fund was absolutely immune from suit pursuant to its Articles of Agreement and, as such, could not be served in this action.[9] In early July, Sacks moved the Superior Court to enter a default judgment.  Subsequently, the Fund removed the case to this Court.

## II.    ARGUMENT

The Fund moves to dismiss Sack's Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 7(b).[10]  The Fund also moves to dismiss for lack of service and failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(5), 12(b)(6), and 7(b).

---

[8] Sacks represented in this litigation that he served the Fund by serving a paralegal working in the District of Columbia's Superintendent of Corporations. *See* Proof of Service filed in D.C. Sup. Ct. As explained in Part II.B., below, putting aside whether service was effected and if it constitutes a way to serve the Fund, Sacks's purported service is a nullity due to Fund's immunity.

[9] The Fund received notice of the suit through a courtesy copied thereof emailed to its counsel.

[10] This motion may be heard pursuant to Fed. R. Civ. P. 7(b) because this action was commenced not by a pleading, but by a motion to modify or vacate an arbitral award. *See e.g., Process and Industr. Devs. Ltd. v. Federal Republic of Nigeria, et. al.,* 962 F.3d 576, 585 (D.C. Cir. 2020) (explaining that in proceedings arising from arbitrations, it is appropriate to treat "motion to dismiss, which was styled as responding to a pleading under Rule 12(b)(1), as a proper motion under Rule 7(b)").

### A.   This Action Must be Dismissed Because the Fund is Absolutely Immune from Sacks's Suit

#### 1.   *Federal Rule of Civil Procedure 12(b)(1).*

The Fund's immunity under the BWAA "implicates the court's subject matter jurisdiction." *Hill v. Smoot*, 308 F. Supp. 3d 14, 20 (D.D.C. 2018); *Polak v. Int'l Monetary Fund*, 657 F. Supp. 2d 116, 120 (D.D.C. 2009), *aff'd*, No. 09-7114, 2010 WL 4340534 (D.C. Cir. Oct. 20, 2010). Thus, the Fund's assertion of absolute immunity "presents a threshold challenge to the Court's jurisdiction" and obligates the Court "to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). The question of the Fund's immunity must be addressed before the Fund is required to respond on the merits to Sack's Motion to Modify and/or Motion to Vacate or Sacks's subsequent Motion for Default. *See e.g., Process and Industr. Devs. Ltd., supra*, 962 F.3d at 584 (quoting *Verlinden B.V. v Cent. Bank of Nigeria* 461 U.S. 480, 493-94 (1983)).

In assessing subject-matter jurisdiction, "the Court must accept as true all of the factual allegations contained in the complaint." *Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 86 (D.D.C. 2010). However, the "plaintiff's factual allegations . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C.2001). The court may also "consider materials outside of the pleadings." *Tootle v. Secretary of the Navy,* 446 F.3d 167, 174 (D.C. Cir. 2006); *Gordon,* 750 F. Supp. at 86. "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the case in its entirety." *Conyers v. Westphal*, 235 F. Supp. 3d 72, 76 (D.D.C. 2017) (citation omitted).

2.      *The Articles of Agreement provide the Fund absolute immunity (BWAA Immunity).*

The Articles of Agreement subject the Fund to judicial process *only* in cases where the Fund "expressly waives" its immunity. Articles of Agreement, Art. IX, Section 3; 22 U.S.C. § 286h. Absent an express waiver, as this court and the D.C. Circuit have repeatedly recognized, the Articles and the BWAA render the Fund absolutely immune from suit, depriving the courts of subject-matter jurisdiction. *See e.g. Nyambal*, *supra*, 772 F.3d at 280–282 (holding the Fund absolutely immune from judicial process, including judicial discovery, where it had not expressly waived immunity); *Polak*, *supra*, 657 F. Supp. 2d at 120; *Kissi v. de Laroisiere*, No. 82-1267, at 2 (D.D.C. June 23, 1982) (J.H. Green, J.).[11] That immunity also renders service of process on the Fund a nullity. *See Garcia v. Sebelius*, 919 F. Supp. 2d 43, 46 (D.D.C. 2013).

The Articles of Agreement put decisions about the Fund's immunity solely in the Fund's hands. And for good reason: the Fund needs that broad immunity to pursue its purposes and avoid unilateral control or interference by the courts of any one of its 189 member states. *See Jam*, 139 S. Ct. at 771 (citing the Fund as an example of an international organization for which the member states specified a heightened level of immunity because its work would be impaired without it); *Mendaro v. World Bank,*, 717 F.2d 610, 615 (D.C. Cir. 1983) (discussing the purposes of international-organization immunity).

As the Supreme Court recently observed, the Fund's Articles provide the Fund a *higher* level of immunity than the charters of other international organizations. *Jam*, 139 S. Ct. at 771-72 (distinguishing the Fund's charter from "the IFC's … charter," which "does not state that the IFC is absolutely immune from suit").  "If the work of a given international organization would be

---

[11] A copy of Judge Green's order of dismissal in *Kissi* is included in the Appendix.

impaired by restrictive immunity, the organization's charter can always specify a different level of immunity." *Id.* at 771.  The Fund's charter, the Supreme Court noted, "do[es] just that." *Id.*; *accord Jam*, 139 S. Ct. at 777 (Breyer, J., dissenting) (noting that, "Congress enacted a separate statute [BWAA] providing [the Fund] with immunity (absent waiver) in all cases").

Therefore, under the Articles of Agreement (and the BWAA), as confirmed by *Jam*, the Fund enjoys the *highest* level of immunity afforded an international organization.

### 3.    *The Contract expressly preserves the Fund's immunity.*

The Fund never waived its immunities.  In fact, the Contract expressly reserved them.  As in any contract dispute, the court's "interpretation . . .  must begin with the plain meaning of the language." *Am. Fed'n of Gov't Employees, Local 2924 v. Fed. Labor Relations Auth.*, 470 F.3d 375, 381 (D.C. Cir. 2006).  "[W]here the language of the particular agreement or provision is clear and unambiguous, the Court must assume that the meaning ordinarily ascribed to the words used reflects the intentions of the parties." *In re Capitol Hill Grp.*, 447 B.R. 387, 394 (D.D.C. 2011).

Here, the Contract could not be clearer in confirming the Fund's immunity.  Article 20 is dedicated to the "Immunities of the International Monetary Fund." *See* Contract, Art. 20.1. That Article incorporates by express reference the Articles of Agreement and the BWAA, and reiterates that the Fund is "immune from every form of judicial process." *Id.* In addition, the Contract expressly states that "submission of a claim or dispute to arbitration … s*hall not be considered to be a waiver of the immunities of the IMF*." *See* Contract, Art. 20.1(b) (emphasis added). This language unambiguously preserves the Fund's immunity, notwithstanding the submission of a dispute to contractual arbitration. *See, e.g.*, *Nyambal*, 772 F.3d at 282 (finding that the plaintiff "ha[d] not raised any specific, plausible assertion that the contracts contain an express waiver" of the Fund's immunity).

Sacks tries to sidestep the reservation of immunities by suggesting that an *implied* waiver occurred when the parties agreed that the American Arbitration Association and the arbitrators should apply the AAA Commercial Arbitration Rules and D.C. law when *they* administer and decide the arbitral case. *See* Sacks's Mot. at 9, Contract sections 20.1 and 20.1(b). Sacks is wrong for several reasons.

*First*, Sacks's argument fails for the simple reason that under the BWAA and the Articles of Agreement, it takes an "*express*" waiver to expose the Fund to judicial process. *See* Articles of Agreement, Art. IX, Section 3; 22 U.S.C. 286h. As the courts of this Circuit have held on multiple occasions, an implied waiver cannot submit the Fund to the jurisdiction of this court. *See id*; *see also Nyambal,* 772 F.3d at 281 (noting that there must be an express waiver in order to waive the Fund's immunity)*; Polak,* 657 F. Supp. 2d at 122 (the Fund's Articles of Agreement do not "permit[] waiver by implication."). Indeed, precisely because an express waiver authorized by the Fund's Executive Board is a rare circumstance, no court of this Circuit has ever found that the Fund has waived its immunity, and this case is no different.  *Cf. Nyambal*, *supra*; *Polak*, *supra*; *Kissi, supra*.

*Second*, assuming *arguendo* that an implied waiver would suffice (it cannot), nothing in the Contract's arbitration clause can be reasonably interpreted as such. The Contract puts final resolution of any dispute squarely in the hands of arbitrators, not the courts: it provides that any dispute "shall be *finally settled* by binding arbitration administered by the [AAA], and that the parties agree to "implement any requirements of the . . . arbitrators . . . ." Contract, Art. 20.1 (emphasis added).  The Contract's incorporation of the AAA Rules merely provides the procedures for AAA and the arbitrators to use in administering and presiding over the final and binding arbitral process. There is not so much as a hint of any judicial involvement.

*Third,* the Contract's reference to D.C. law gets Sacks no further. The clause states that "*[t]he arbitral case* shall be decided according to . . . the law of the District of Columbia." Contract, Art. 20.1(b) (emphasis added). This singular reference to District of Columbia law simply tells the arbitrators what substantive law to apply when they reach a decision. Notably, the Contract's reference to D.C. law is specifically in the context of "decid[ing]" "the arbitral case," *not* a judicial proceeding.

*Fourth,* were there any doubt, the arbitration clause expressly reserves the Fund's immunity from judicial process and reiterates that "submission of a claim or dispute to arbitration … shall not be considered to be a waiver of the immunities of the IMF." Contract, Art. 20.1. Sacks's strained theory cannot override this unambiguous language of contractual non-waiver. *Nyambal*, 772 F.3d at 282.

In sum, nothing in the Contract "expressly waives" the Fund's immunity. Nor has the Executive Board otherwise waived the Fund's immunity from judicial process for the purposes of this proceeding.  *See* Affidavit of Jianhai Lin. To the contrary, the Fund has preserved its immunities at every stage: it expressly asserted its immunity in the Contract, restated its immunity in the D.C. Superior Court (through its letter and Praecipe to the Court), reserved its immunity in the Notice of Removal, and reaffirms its immunity here in this Motion. Accordingly, the Court should conclude that the Fund is immune from this action and grant its motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 7(b).

### B.     Sacks's Failure to Serve the Fund Independently Warrants Dismissal Under Rule 12(b)(5) and 7(b)

Dismissal is also appropriate under Federal Rules of Civil Procedure 12(b)(5) and 7(b) because Sacks's purported service of process on the Fund was ineffective due to its absolute

immunity.[12]  A Rule 12(b)(5) motion is proper where there is an issue with the "mode of delivery or the lack of delivery of the summons and complaint." *Xie v. Sklover & Co., LLC*, 260 F. Supp. 3d 30, 38 (D.D.C. 2017). Here, because the Fund is immune from judicial process (*see* Part A, above), Sacks's attempt to serve the Fund with process is necessarily ineffective. *See*, *e.g.*, *Garcia v. Sebelius*, 919 F. Supp. 2d at 46 ("It follows from this ruling" finding absolute immunity "that the plaintiffs' attempt to serve [international organization] with process was ineffective").  Indeed, the Fund's counsel asserted its immunity to judicial process in correspondence to Sacks's counsel and to the D.C. Superior Court.  *See* 05/20/2020 Letter, Case No. 2020 CA 000711 C ("[A]ny summons directed at the Fund in connection this this proceeding, any purported service of it upon the Fund, is a legal nullity" due to the Fund's immunity.)  For this reason, the Court should grant the Fund's motion to dismiss under Federal Rules of Civil Procedure 12(b)(5) and 7(b).

> ### C.   Sacks's Motion Fails to State a Claim Upon Which Relief May be Granted and it Should be Dismissed under Rules 12(b)(6) and 7(b)

Because the Fund is immune from every form of judicial process, Sack's Motion fails to state a claim upon which relief may be granted. Contrary to the explicit terms of the Fund's Articles of Agreement, the clear language of the Contract, the D.C. Circuit's controlling decision in *Nyambal*, and this Court's own precedent in *Kissi*, Sacks attempts to sue an international organization that, as a matter of federal law, enjoys absolute immunity from suit. Because relief cannot be granted in this action, it must be dismissed under Fed. R. Civ. P. 12(b)(6). *See*, *e.g.*, *Kissi v. de Laroisiere*, No. 82-1267 (D.D.C. June 23, 1982) (dismissing action against Fund official on account of his immunity); *Donald v. Orfila*, 618 F. Supp. 645, 646 (D.D.C. 1985) (granting Rule

---

[12] Because immunity is a dispositive "threshold" issue, *Process and Industr. Devs. Ltd.*, *supra*, 962 F.3d at 584, this Motion does not address Fund's other arguments and defenses (including other defects in Sacks' service of process), which Fund hereby reserves.

12(b)(6) motion to dismiss action against secretary general of the Organization of American States on account of his immunity from suit), *aff'd*, 788 F.2d 36, 37 (D.C. Cir. 1986).

## III.    CONCLUSION

Because of the Fund's absolute immunity provided by the Articles of Agreement and the BWAA, this Court lacks subject-matter jurisdiction, thereby warranting dismissal under Federal Rules of Civil Procedure 7(b) and 12(b)(1).  Dismissal is also proper pursuant to Federal Rules of Civil Procedure 7(b), 12(b)(5), and 12(b)(6).  Thus, the Fund respectfully moves the Court to dismiss this action with prejudice and close the case.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2020, the foregoing document was filed with the Clerk

of the Court via ECF and served upon counsel of record by U.S. Mail:

> Donald H. Spence, Jr., Esq.
> SPENCE & BECKER, LLC
> 9711 Washingtonian Blvd., Ste 550
> Gaithersburg, Maryland 208
>
> *Attorneys for Leonard A. Sacks &*
> *Associates, P.C.*

*/s/ Renee Appel*
Renee B. Appel

13
